UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

------------------------------------------------------------------ x
LORI S.,

                Plaintiff,

   -against-

MARTIN O'MALLEY,
Commissioner of Social Security,[1]

                Defendant.
------------------------------------------------------------------ x

**RULING & ORDER ON PLAINTIFF'S MOTION TO REVERSE OR REMAND AND DEFENDANT'S MOTION TO AFFIRM DECISION OF COMMISSIONER**

3:22-CV-01448 (VDO)

**VERNON D. OLIVER**, United States District Judge:

    Plaintiff Lori S.[2] has filed an administrative appeal under 42 U.S.C. §§ 405(g) and 1383(c)(3) against the Commissioner of Social Security ("Commissioner" or "Defendant"), seeking to reverse the decision of the Social Security Administration ("SSA") denying her claim for Title II Disability Insurance Benefits ("DIB"), or, in the alternative, to remand the case for a new hearing. (ECF No. 14.) The Commissioner has cross-moved to affirm the decision. (ECF No. 16.)

    For the reasons set forth below, Plaintiff's motion is **granted** and Defendant's motion is **denied**. The decision of the Commissioner is **vacated** and **remanded** for rehearing and further proceedings in accordance with this Ruling and Order.

---

[1] On December 20, 2023, Martin O'Malley replaced Kilolo Kijakazi as Commissioner of the Social Security Administration. Pursuant to Federal Rule of Civil Procedure 25(d), the Clerk of Court is directed to substitute Martin O'Malley for Kilolo Kijakazi in this action.

[2] Plaintiff is identified by her first name and last initial pursuant to the District's January 8, 2021 Standing Order. *See* Standing Order Re: Social Security Cases, No. CTAO-21-01 (D. Conn. Jan. 8, 2021).

I.    **BACKGROUND**

The Court assumes familiarity with Plaintiff's medical history, as summarized in the statements of facts attached to the parties' respective memoranda (ECF Nos. 14-2, 16-2), which the Court adopts and incorporates by reference.

On January 11, 2019, Plaintiff applied for DIB, alleging disability beginning on April 27, 2018. (Certified Administrative Record ("R."), at 301–04.[3]) Plaintiff's claims were denied on March 21, 2019. (R. at 102, 153–56.) Plaintiff's claims were again denied upon reconsideration on January 23, 2020. (R. at 149–50, 164.) On March 4, 2020, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (R. at 173.) Plaintiff, Plaintiff's former attorney (Mark Wawer), and an impartial vocational expert (Angela Eskandar) participated in a hearing before an ALJ (Judge Alexander Borré) on April 13, 2021. (R. at 45.)

On August 5, 2021, the ALJ found Plaintiff to be not disabled under sections 216(i) and 223(d) of the Social Security Act, and thus not entitled to DIB. (R. at 37.) Subsequently, the Appeals Council found no reason to review the ALJ's decision and denied Plaintiff's request for appellate review. (R. at 1.)

Plaintiff filed the instant action on November 13, 2022. (ECF No. 1.) On March 11, 2023, Plaintiff moved to reverse the decision of the Commissioner. (ECF No. 14.) Defendant cross-moved on May 10, 2023. (ECF No. 16.)

---

[3] "R." refers to the Certified Administrative Record filed at ECF No. 11. The pagination refers to the pagination on the bottom right-hand corner of the record, as opposed to the ECF pagination.

## II.     LEGAL STANDARD

"Congress has authorized federal courts to engage in limited review of final SSA disability benefit decisions." *Schillo v. Kijakazi*, 31 F.4th 64, 74 (2d Cir. 2022); *see also* 42 U.S.C. § 405(g) ("The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing. The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive[.]"). Therefore, a court may "set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by substantial evidence or if the decision is based on legal error." *Burgess v. Astrue*, 537 F.3d 117, 127 (2d Cir. 2008) (internal quotation marks and citation omitted). "'Substantial evidence' is evidence that amounts to 'more than a mere scintilla,' and has been defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "If evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld." *Id.*

To be disabled, thus qualifying a claimant to benefits, a claimant must be unable "'to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" *Cichocki v. Astrue*, 729 F.3d 172, 176 (2d Cir. 2013) (quoting 42 U.S.C. § 423(d)(1)(a)). In determining whether a claimant is disabled, "the agency follows a five-step process detailed in 20 C.F.R. § 404.1520(a)(4)(i)–(v)." *Schillo*, 31 F.4th at 70.

> Under the five-step process, the Commissioner determines: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe physical or mental impairment, or combination of severe impairments; (3) whether the impairment (or combination) meets or equals the severity of one of the impairments specified in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listing of Impairments"); (4) whether, based on an assessment of the claimant's residual functional capacity, the claimant can perform any of her past relevant work; and (5) whether the claimant can make an adjustment to other work given the claimant's residual functional capacity, age, education, and work experience.

*Id.* (citing 20 C.F.R. § 404.1520(a)(4)(i)–(v)). The Commissioner considers whether "the combined effect of all [] impairments . . . would be of sufficient severity" to establish eligibility for Social Security benefits. 20 C.F.R. § 404.1523. While the finding of whether a claimant is disabled is reserved for the SSA, the SSA must consider an opinion provided by a claimant's treating physician and then draw its own conclusions as to whether the data indicate disability. *Schillo*, 31 F.4th at 70 (citing *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999)).

### III. DISCUSSION

Plaintiff raises two primary arguments in her motion. First, she argues that the ALJ made a reversible error by weighing the medical opinions in a manner inconsistent with regulation, specifically, relying on the least restrictive opinion rather than considering the opinions of Plaintiff's treating sources. (ECF No. 14-1 at 7–12.). Second, Plaintiff argues that the ALJ erred by formulating a residual functional capacity ("RFC") description that lacked multiple exertional and non-exertional factors. (*Id.* at 12–18.) The Court addresses each of these objections in turn.

#### A. The ALJ's Evaluation of Treating Medical Opinions

The ALJ considered opinions from the following treating sources: APRN Charry, who completed a medical source statement in February 2021 and had been seeing Plaintiff every

4

one to three months since March 2019; Ms. McLaughlin, LPC, who provided a medical source statement in March 2019, letters in August and March 2019, and had been treating Plaintiff twice a week since 2015; and Dr. Han, who completed medical source statements in March and June 2019, and had been seeing Plaintiff every three weeks since May 2016. The ALJ found APRN Charry's opinion that Plaintiff had "marked limitations in the ability to[] tolerate normal levels of stress, complete a normal work-day and work-week without interruptions . . . and be punctual within customary tolerances" to be not entirely persuasive because it was not supported by his "own treatment notes showing intact mental status functioning" or by the "longitudinal evidence." (R. at 32.) Similarly, ALJ Borré determined that Dr. Han's statements that "opined to various mental limitations[,]" such as the opinions that Plaintiff had "an inability to interact appropriately with others, use coping skills appropriately, and handle frustration appropriately[,]" were "unpersuasive" because they were "inconsistent with the evidence contemporary to his evaluation date" and some of his treatment notes. (R. at 29–30.[4]) Finally, the ALJ found that Ms. McLaughlin's submissions were "not persuasive" because they were not supported by her treatment notes and were inconsistent with the "evidence showing benign mental status findings." (R. at 29, 31.) ALJ Borré only found the opinions of the Disability Determination Services (DDS) consultants and state consultative examiner Dr. Kogan to be persuasive. (R. at 31, 33.)

Plaintiff claims that, where the basis for a treating source's opinion is unclear, the ALJ has an obligation to develop the record. (ECF No. 14-1 at 12.) Plaintiff further argues that, by

---

[4] Page 11 of the ALJ's decision is mistakenly marked as Record page number 29, and page 12 of the ALJ's decision as Record page 31.

"dismissing all three treating source opinions, the ALJ relied on misstatements and minimizations of the evidence." (*Id.* at 11.) Specifically, Plaintiff notes that the ALJ repeatedly and mistakenly referenced that Plaintiff "tak[es] care of her elderly 76-year-old roommate" (R. at 29), as Plaintiff testified that "I wasn't caring for her. If anything, she was caring for me. That's why I moved back in with her . . . I moved in with her because it was stable housing, it was somewhere I felt safe, and it was reliable.[5] (R. at 64.) The Commissioner responds that the ALJ provided a "detailed analysis of these three opinions" that "properly evaluated the opinions for persuasiveness while thoroughly discussing the two most important factors of consistency and supportability." (ECF No. 16-1 at 13–14.) The Court agrees with Plaintiff.

An ALJ has a duty to develop the record where obvious inconsistencies exist. *See Daniela B. v. Kijakazi*, 675 F. Supp. 3d 305, 317 (E.D.N.Y. 2023) (explaining that an ALJ has an "affirmative duty to recontact a medical expert if an ALJ makes an initial determination that a medical expert's opinions are vague or appear to be inconsistent with their examination notes"); *Beckman v. Comm'r of Soc. Sec.*, No. 21-CV-1492 (PKC), 2022 WL 4451041, at *4 (E.D.N.Y. Sept. 23, 2022) ("Though the most obvious gaps in a record typically are akin to missing medical evidence, inconsistencies or vague opinions can also create a duty to further develop the record.").

Here, ALJ Borré noted inconsistencies between each of the treating source's opinions and their treatment notes. In each instance, he concluded that the opinion was unsupported by the treatment notes and inconsistent with the longitudinal record and Plaintiff's subjective

---

[5] The Court notes that nowhere in his decision does the ALJ state that he found Plaintiff's testimony to be uncredible.

ability to perform "various activities of daily living." (R. at 29, 30, 31.) The record, however, does not contain any indication that the ALJ contacted each of these treaters to reconcile his or her opinion with his or her notes.

In fact, the ALJ admitted that it was difficult for him to evaluate Ms. McLaughlin's statements without her records at the hearing. (R. at 53.) The ALJ asked Plaintiff's representative to get the records from Ms. McLaughlin, giving him two weeks to do so. (R. at 85.) On April 16, 2021, Mr. Waver sent ALJ Borré Ms. McLaughlin's treatment notes from 2019 and noted that Ms. McLaughlin "would need at least a month from today to process any records from the year 2020." (R. at 1195.) The record, however, does not contain any of Ms. McLaughlin's treatment notes from 2020 and thus, the Court concludes that the ALJ formulated his decision based on an incomplete record.

Accordingly, the Court remands this case for further development and more specific findings. *See Cheryl W. v. Kijakazi*, No. 22-CV-1476 (VAB), 2024 WL 1012923, at *5 (Mar. 8, 2024); *Delacruz v. Astrue*, No. 10-CV-05749 (JGK), 2011 WL 6425109, at *26 (S.D.N.Y. Dec. 1, 2011) ("[I]f there are gaps in the administrative record, the court may properly remand the case for further development of the evidence or for more specific findings.") (citing *Rosa v. Callahan*, 168 F.3d 72, 82–83 (2d Cir. 1999)), *report and recommendation adopted*, 2011 WL 6425101 (S.D.N.Y. Dec. 21, 2011).

### B. The RFC Assessment

The ALJ found that Plaintiff has the capacity to perform "a full range of work at all exertional levels" limited to "simple, routine tasks" with "no public interaction." (R. at 26.) In formulating this opinion, ALJ Borré determined that Plaintiff's hepatitis C, right lateral epicondylitis, neuropathy/carpal tunnel syndrome, lumbar generative disc disease, and right

7

hip pain were non-severe and "did not result in any continuous exertional or non-exertional functional limitations." (R. at 23.) In making this determination, the ALJ stated that "these impairments establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on the claimant's ability to meet the basic demands of work activity." (*Id.*)

Plaintiff argues that the ALJ "failed to incorporate exertional, manipulative, and even non-exertional factors in his RFC description," which is "far less restrictive than any opinion in the record." (ECF No. 14-1 at 13.) The Commissioner responds that the assigned RFC is supported by substantial evidence. (ECF No. 16-1 at 17.) The Court disagrees with the Commissioner.

Here, the ALJ concluded that Plaintiff's "ability to perform work at all exertional levels has been compromised by nonexertional limitations." (R. at 36.) The vocational expert testified that Plaintiff would be able to perform the requirements of representative occupations such as linen room attendant (222.387-030), cleaner II (919.687-014), and floor waxer (381.687-034). (*Id.*) Each of these occupations has a "medium" exertional level (*id.*), while Plaintiff's previous relevant occupations were classified at the "sedentary" exertional level. (R. at 35.)

"Under Social Security regulations, 'medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds.'" *Trepanier v. Comm'r of Soc. Sec. Admin.*, 752 F. App'x 75, 78 (2d Cir. 2018) (quoting 20 C.F.R. § 404.1567(c)); *see also Urtz v. Acting Comm'r of Soc. Sec.*, 159 F.3d 1349, 1998 WL 487083, at *1 (2d Cir. June 11, 1998) ("The Commissioner's regulations define medium work as involving lifting no more than fifty pounds at a time with frequent lifting or carrying of objects weighing up to twenty-five pounds and standing for approximately six hours out of an

eight-hour work day.") (citing 20 C.F.R. §§ 404.1567(c), 416.967(c)). "For purposes of medium work, a claimant must be able to 'frequent[ly] lift[ ] or carry[ ] objects weighing up to 25 pounds' and lift 'no more than 50 pounds.'" *Trepanier*, 752 F. App'x at 78 (quoting 20 C.F.R. § 404.1567(c)) (alterations in original); *cf. Garcia v. Chater*, 3 F. Supp. 2d 173, 173 (D. Conn. 1998) (crediting the "plaintiff's testimony that he can walk for an hour, stand for an hour, lift fifty pounds and sit for six hours" in determining that he "retains the capacity to perform a full range of light to medium work"). Indeed, "an employer would be entitled to rely on this aspect of the definition[, the lifting of no more than 50 pounds,] as well as the 'frequent lifting or carrying' component." *Trepanier*, 752 F. App'x at 78 (quoting 20 C.F.R. § 404.1567(c)).

There is not sufficient record evidence to support the notion that Plaintiff could satisfy these threshold lifting requirements and do medium work. *Cf. Mark H. v. Comm'r of Soc. Sec.*, 5:18-CV-1347 (ATB), 2020 WL 1434115, at *9 (N.D.N.Y. Mar. 23, 2020) (dismissing the argument that the ALJ "failed to cite to any specific evidence to support the conclusion [that the plaintiff] is capable of lifting the weight corresponding to medium work" because "the opinion of [the consultative examiner] provided substantial evidence to support a RFC of medium work. . . ."). Significantly, the ALJ relied on the opinions of Dr. Kogan and the DDS consultants to find that Plaintiff could perform work at all exertional levels, but none of these opinions specify the exertional level at which Plaintiff is capable of performing. Rather, Dr. Kogan's opinion, which ALJ Borré found to be persuasive, states that Plaintiff's work-related activities "are mildly limited due to symptoms of lumbar spine pain." (R. at 31, 112, 1079.)

Indeed, there is no record evidence—much less, substantial evidence—to support the notion that Plaintiff can perform work "at all exertional levels." Rather, Plaintiff points to

9

multiple references in the record suggesting that exertional limitations may be warranted in the RFC. *See* ECF No. 14-1 at 16–17 (citing R. at 638, 1049, 1054, 1055, 1057, 1059, 1061, 1073–74). Given the significance of resolving this important issue, whether Plaintiff can "'frequent[ly] lift[ ] or carry[ ] objects weighing up to 25 pounds'" and lift "'no more than 50 pounds[,]'" and the absence of record evidence supporting the ALJ's findings related to Plaintiff's exertional level, the ALJ's decision as to Plaintiff's RFC cannot be affirmed. *See Vecchitto v. Saul*, No. 19-CV-00726 (TOF), 2020 WL 4696791, at *6 (D. Conn. Aug. 13, 2020) ("[T]he only evidence directly related to the Plaintiff's ability to lift, was her testimony during the benefits hearing that she cannot lift more than 10 pounds and has difficulty lifting in general because of her tremor and cervical spine impairment. . . . Accordingly, the Court concludes that . . . her medical records are not 'sufficiently comprehensive to permit an informed finding by the ALJ.'") (quoting *Sanchez v. Colvin*, No. 13-CV-6303 (PAE), 2015 WL 736102, at *5 (S.D.N.Y. Feb. 20, 2015)).

Therefore, the Court will remand this case for the ALJ to further develop the record. On remand, the ALJ should also discuss Plaintiff's off-task behavior and absenteeism resulting from her combined limitations in determining her RFC. *See Cassandra S. v. Kijakazi*, No. 3:22-CV-328 (MPS) (RMS), 2023 WL 2867068, at *12 (D. Conn. Jan. 30, 2023) (remanding for further development because the Court could not conclude that the record had been developed enough to allow the ALJ to determine whether claimant fell outside the limitations posed in hypotheticals to vocational expert).

## IV. <u>CONCLUSION</u>

For the foregoing reasons, the Plaintiff's motion to reverse or remand the Commissioner's decision (ECF No. 14) is **GRANTED** and the Commissioner's motion to

affirm the decision (ECF No. 16) is **DENIED**. The decision of the Commissioner is **VACATED** and **REMANDED** for rehearing and further proceedings in accordance with this Ruling and Order. The Clerk of Court is respectfully directed to close the case.

**SO ORDERED.**

Hartford, Connecticut
March 29, 2024

/s/Vernon D. Oliver
VERNON D. OLIVER
United States District Judge